**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THOMAS J. CALHOUN, a/k/a**
**JOHN ARTHUR ORR,**
     **Plaintiff**

**-vs-**
                                                                                         **Case No. 6:04-cv-106-Orl-31DAB**

**VOLUSIA COUNTY, ET AL**
     **Defendant**
_____/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **DEFENDANTS' (HALIFAX AND SMYTH) MOTION FOR SUMMARY JUDGMENT (Doc. No. 104)**
>
> **FILED:** March 12, 2007
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiff, currently incarcerated, sues these and other Defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights arising out of a claimed withholding of medical attention and interference with prescribed medical treatment. According to the Third Amended Complaint (Doc. No. 39), Defendant Halifax Medical Center (herein "Halifax") is a governmental entity which has contracted to "maintain responsibility in the provision of medical care to prisoners" in the custody of

Case 6:04-cv-00106-GAP-DAB   Document 137   Filed 07/09/07   Page 2 of 11 PageID 1061

the Volusia County Corrections Department (Allegation 2). Defendant J. P. Smyth[1] ("Smyth") was, at the time of the events alleged, the Medical Director Physician and Supervisor of the jail's infirmary (Allegation 5). Plaintiff alleges that he was denied adequate medical care after becoming ill while incarcerated, and that certain Defendants failed to provide the post-operative medical care and treatment ordered by his physicians. According to Plaintiff's allegations, the failure resulted in physical injury and aggravation of his medical condition.

Halifax and Smyth move for summary judgment, attaching material purporting to be excerpts of Plaintiff's medical and inmate records, as well as the Affidavit of Eugene Crouch, M.D. and the Affidavit of Defendant Smyth (Doc. No. 104). Plaintiff has filed numerous responses (Doc. Nos. 111, 114, 116, and 133); Defendants have filed a response to the responses (Doc. No. 126); and Plaintiff has filed a rebuttal (Doc. No. 134). The Court finally put an end to the seemingly endless supplementation (Doc. No. 136), and the matter is now ripe for review.

### *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court should view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The

---

[1] Although Plaintiff spells Defendant's name "Smythe," Defendant points out that the correct spelling is "Smyth."(Doc. No. 104).

burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### *FACTUAL BACKGROUND*

Defendants have tendered several exhibits which they represent to be excerpts of Plaintiff's medical records and inmate records (Doc. No. 104, Exhibit A). While certain factual disputes exist, addressed below, for present purposes, the *material* facts pertinent to this motion are undisputed.

Thomas J. Calhoun was received at the Volusia County Department of Corrections under the name of John Arthur Orr on May 6, 2006 [Exhibit A at 1]. On May 13, 2003, Plaintiff was given a physical examination by Samuel Montgomery, R.N., which revealed no medical issues [Exhibit A at 4]. Plaintiff was assessed as a "healthy male" and was released to "full work" status. *Id.*

Shortly thereafter, Plaintiff became ill. The exact date of onset of the illness is in dispute, with Plaintiff claiming that he became ill on May 16 and these Defendants relying on records which indicate an onset the morning of May 17. Regardless, it is not disputed that on the morning of May 17, 2003, Plaintiff submitted an Inmate Sick Call Request form stating that he was experiencing "either gall bladder or bowel movement problems, throwing up all night stomach pains clear to kidneys" [Exhibit A at 5]. Plaintiff was seen at the detention center medical clinic at approximately 06:00 on May 17, 2003, with complaints of vomiting blood with associated abdominal and flank pain. He was examined by Anita MacDonald, R.N. [Affidavit of Joseph Smyth, Doc. No. 104-9]. Upon examination, Plaintiff's abdomen was soft but tender to touch and he had slightly decreased bowels sounds in all four quadrants. Nurse MacDonald notified the on-call Physician's Assistant, R. Iskander, and he ordered that Plaintiff be held in the clinic for observation and placed on a clear liquid

diet [Smyth Affidavit]. This direction was made "based on standing orders that [Smyth] had established within the clinic." [Smyth Affidavit].

Plaintiff did not experience any additional bouts of nausea or vomiting throughout the remainder of the day, and stated, at 15:44 on May 17, 2003, that "I feel fine now and I want some regular food." [Exhibit A at 7]. He was told that he could not receive solid food until the medical doctor confirmed that it was okay. Plaintiff eventually agreed to accept the prescribed liquid diet. By 20:10 on May 17, 2003, Plaintiff had not experienced any additional episodes of nausea, vomiting or abdominal pain. The notes indicate that he stated: "I haven't had more problems since I [sic] been here" and then requested "can I at least have some food in the morning" [Exhibit A at 8].

The following day, May 18 at 11:10, Plaintiff complained of vomiting and sharp pain and was examined by Sam Montgomery, R. N. He was found to have a flat, rigid abdomen with right sided tenderness and positive rebound. His bowel sounds were decreased and he was unable to lie flat [Exhibit A at 8]. Dr. Smyth was notified by telephone and he ordered that Plaintiff be immediately transferred to Halifax Medical Center to evaluate his pain and to rule out appendicitis [*Id.* and Smyth Affidavit]. Plaintiff left for the hospital at 11:20, ten minutes later.

Plaintiff was examined at the Emergency Department at Halifax on May 18, 2003 [Exhibit A]. A CT scan of the abdomen and pelvis revealed a thickened gallbladder and Plaintiff was diagnosed with gallbladder disease. Dr. Peter Springer ordered that Plaintiff be admitted to the hospital and started on antibiotics, and a surgical consult was had [Exhibit A at 18-19]. According to the hospital records, a laparoscopic cholecystectomy was performed by Dr. Harold A. Fenster on May 22, 2003; four days after Plaintiff was admitted to the hospital [Exhibit A at 20 - 23]. Plaintiff disputes this, and contends that surgery was performed on May 20, two days after admission. [Doc. No. 134-3, Exhibit

E]. Regardless, for present purposes, it is undisputed that Plaintiff underwent gallbladder surgery at least two days after admission.

Plaintiff was discharged from Halifax on May 22, 2003, with discharge instructions which included: "change dressing daily or as needed," "no lifting, carrying, or exercising for 2 months", and "low fat diet for 2 weeks than [sic] as tolerated." [Exhibit A at 24].[2] Plaintiff was also provided prescriptions for Roxicet, a narcotic pain medication and Cipro, an antibiotic. The Roxicet was to be taken every four to six hours as needed and the Cipro was to be taken twice per day for seven days. [Exhibit A at 24 - 26; Smyth Affidavit].

Plaintiff returned to the Volusia County Department of Corrections medical clinic at 18:00 on May 22, 2003 [Smyth Affidavit]. Dr. Smyth reviewed the discharge instructions and ordered the pain medication changed to Lortab, four times per day for three days. This medication was supplemented with Tylenol [Exhibit A at 8; Smyth Affidavit]. Although Plaintiff appears to allege that he did not receive his medications, the Affidavits and the medical records indicate that Plaintiff received all of the prescribed doses of Cipro, Lortab and Tylenol [Exhibit A at 27]. By 20:40 on May 22, 2003, Plaintiff was asleep on his bunk and did not offer any special complaints when roused to check his vital signs [Exhibit A at 8].

Plaintiff remained in the clinic on May 23, 2003, whereupon his dressings were examined and found to be dry and intact. His vital signs remained normal throughout the day and he denied any pain or discomfort. [Exhibit A at 8]. At 08:20 on May 24, 2003, Plaintiff was again examined and found to have normal vital signs, bowel sounds in all four quadrants and a dry and intact surgical dressing

---

[2]Plaintiff asserts that other jail employees, specifically Correctional Officer and co-Defendant Bispo, were not notified of these restrictions [Doc. No. 111-3]

[Exhibit A at 9]. He was reexamined at 20:45 that evening with no change in his condition. [Exhibit A at 9].

On May 25, 2003, at 08:40, Plaintiff was again examined. *Id.* All of his vital signs remained normal, and all of his dressings were dry and intact. Plaintiff voiced no complaints and exhibited no signs or symptoms of any distress. Plaintiff was discharged from the medical clinic and returned to the general population at 15:30 on May 25, 2003, with instructions to return to the clinic for followup. Plaintiff did not attend either follow up appointment [Exhibit A at 9].

### *ISSUES AND ANALYSIS*

As presented by Plaintiff, the issues are whether there is more than a scintilla of evidence that Halifax and Smyth: 1) "implemented policies and procedures which allowed unlicensed and non-physician persons to exercise full discretionary control over the medical care of prisoners in the infirmary" 2) denied Plaintiff adequate post operative treatment after surgery as a result of "rampant deficiencies in the operation of the infirmary" 3) "were aware of the understaffing of the infirmary" 4) "were aware of Plaintiff's post operative needs and failed to provide adequate post operative care" 5) "were aware they were placing the financial considerations of Halifax ahead of the medical needs" of prisoners, and 6) "failed to ensure that a qualified medical person was available to diagnose and treat Plaintiff promptly and visually, when the plaintiff manifested his illness." (Doc. No. 11). As is clear by a review of the applicable law, however, the issues are far simpler.

The Supreme Court set forth the standard for prison medical care in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976): "deliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." However, it is clear that not every complaint by a prisoner regarding medical care rises to the level of a

constitutional violation. *Id*. at 106. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Id*. at 105-06.

As recognized by the Eleventh Circuit Court of Appeals, to demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id*. (citations omitted).

The Eleventh Circuit has described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) abrogated on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quotation marks and internal citation omitted). In either situation, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id*. (internal citation omitted).

Assuming a plaintiff can establish a serious medical condition, the next step requires a consideration of the subjective component, whether Defendants were deliberately indifferent to that serious medical need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal citation omitted).

Viewed most liberally, Plaintiff asserts deliberate indifference in that: 1) he was attended to in the clinic by unqualified nurses and not doctors (alleged to be a violation of Halifax policies); 2) he was placed on a liquid diet and in isolation, without a doctor's personal examination to determine if this was appropriate (alleged to be due to a conscious failure to adequately staff the infirmary to deal with emergencies); 3) there was a failure to notify the Corrections staff of his physical restrictions following surgery, which led to an incident with a corrections officer; and 4) there was a failure to comply with the discharge instructions regarding his medications and changing of his surgical dressing. The Court finds that none of these assertions is sufficient to establish a constitutional violation.

"Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' " *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citation omitted). As set forth above, to show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal citations omitted). To show the required "subjective intent to punish," a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference. *Id., see also Salas v. Tillman* 162 Fed.Appx. 918, *921-922, 2006 WL 122426 (11th Cir. (Ga.), 2006).

Here, while there is no doubt that Plaintiff's gallbladder disease qualifies as a serious medical need, there is no showing that he received deliberately indifferent care from these Defendants. Viewed liberally to Plaintiff, the medical record indicates that he was seen in the infirmary on the very day he sought assistance, he was treated conservatively, pursuant to standing orders issued by a physician, he appeared to get better, but relapsed the next day and was immediately transferred to the Hospital. Following surgery, he returned to the clinic, where he was monitored, given medication and his dressings were checked. While Plaintiff subjectively feels he did not receive adequate care in that he would have preferred a physician to examine him personally, and wanted his dressings changed (as opposed to checked), the issue is not whether *better* medical care could have been provided, but whether the medical care that *was* provided was adequate. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (Where an inmate receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference.); *see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."). Here, the evidence of record, including the Affidavit of Drs. Smyth and Crouch, indicate that the medical care provided by the clinic was at all times at least adequate under this standard.

To the extent that Plaintiff contends that there was a delay in his diagnosis and thus, his treatment, the Eleventh Circuit has held:

> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further . . . the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be

> interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill, supra*, 40 F.3d at 1188-89 (11th Cir. 1994) (internal citations, punctuation, and emphasis omitted). Applied here, Plaintiff places no such evidence in the record. Indeed, the medical record establishes that Plaintiff was seen in the Emergency Room on May 18, 2003, but did not undergo surgery until days later. Plaintiff establishes no worsening of his condition, nor any permanent injury that can be traced to a failure to immediately operate. Thus, there is nothing in the record to indicate that any delay on the part of the clinic or the Hospital was detrimental to Plaintiff's condition, nor that the delay was a result of deliberate indifference.

To the extent Plaintiff complains that these Defendants failed to properly communicate his post-surgery restrictions to other jail officials, such an allegation, without more, does not establish deliberate indifference to his medical needs. Even assuming that these Defendants had a duty to properly inform other officials of medical restrictions and that these Defendants breached that duty, there is no evidence from which a *purposeful* disregard can be inferred. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (internal quotation omitted). Absent any evidence going to the subjective knowledge of Smyth or Halifax, any failure to communicate a restriction is equally consistent with mere inadvertence or negligence.

### *CONCLUSION*

Despite being given numerous opportunities to supplement the record, Plaintiff presents no *evidence* from which a jury could find that the conduct of these Defendants violated his constitutional rights. It is **respectfully recommended** that the motion be **granted.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 9, 2007.

                                            *David A. Baker*
                                            DAVID A. BAKER
                                            UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy