# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THOMAS J. CALHOUN, a/k/a**
**JOHN ARTHUR ORR,**
        **Plaintiff**

**-vs-**                                      **Case No.  6:04-cv-106-Orl-31DAB**

**VOLUSIA COUNTY, et al.,**
                **Defendants**

_____

# ORDER

On July 9, 2007, Magistrate Judge Baker entered a Report and Recommendation (Doc. 137), recommending that the Motion for Summary Judgment filed by Defendants Halifax Medical Center and John Smyth (Doc. 104) be GRANTED.  Plaintiff filed timely objections to the Report (Doc. 140) and Defendants responded (Doc. 142).  Upon *de novo* review of the above, and for the reasons stated herein, this Court concurs with the recommendation of the Magistrate Judge.

## I. Statement of Facts

At all times relevant to this action, Plaintiff was an inmate at the Volusia County Detention Center ("VCDC"), Defendant Halifax Medical Center ("Halifax") was a governmental entity which had contracted to "maintain responsibility in the provision of medical care to prisoners" in the custody of the Volusia County Department of Corrections, and Defendant Joseph P. Smyth ("Dr. Smyth") was the Medical Director Physician and Supervisor of the infirmary at the VCDC. The following statement of facts is presented in the light most favorable to the Plaintiff:

At 6:00 a.m. on May 16, 2003, Plaintiff was brought into the infirmary at VCDC in a wheelchair. (Doc. 111 at 7). The officer who brought him to the infirmary told the nurse that he observed Plaintiff on the floor of his cell moaning, vomiting blood and complaining of severe abdominal pain and right flank pain. (Doc. 111 at 7). Plaintiff was seen by Registered Nurse Anita Macdonald ("Macdonald"). (Doc. 111 at 3). Macdonald contacted Physician's Assistant Rafat Iskander who, over the telephone, directed MacDonald to place Plaintiff in isolation for observation and put him on an all liquid diet. (Doc. 111 at 3; Doc. 111-2 at 6). At 3:42 p.m. on May 16th, Plaintiff signed a form refusing the liquid diet and isolation. (Doc. 111-2 at 5; Doc. 111 at 7). Plaintiff states that he signed this refusal because he wanted to be seen by a doctor or to be able to make a phone call to his family. (Doc. 111 at 7; Doc. 140 at 7). Plaintiff was kept in isolation anyway and continued vomiting throughout the night of the 16th and into the morning of the 17th. (Doc. 111 at 7). Plaintiff then submitted a "Sick Call Request Form" on May 17th, while he was in isolation, stating that he had "either gall bladder or bowel movement problems, [was] throwing up all night, [and had] stomach pains clear to kidneys." (Doc. 111 at 8; Doc. 104-3 at 1). By the afternoon of the 17th, having no food in his stomach for over 24 hours, Plaintiff stated that he was "feeling better although starved." (Doc. 111 at 4). At 4:50 p.m. on May 17th, Plaintiff agreed to the liquid diet. However, Plaintiff's symptoms of pain and vomiting returned on the morning of May 18th, and he was examined by Registered Nurse Montgomery at approximately 11:00 a.m. (Doc. 111 at 8; Doc. 111-2 at 15). At this time, Dr. Smyth was contacted via telephone and ordered that Plaintiff be transported to the Halifax Medical Center ("HMC") Emergency Department immediately. Plaintiff was admitted to HMC at 9:18 p.m. on May 18, 2003.

On May 20, 2003 Plaintiff underwent surgery to remove his gallbladder at HMC, and on May 22nd he was discharged from HMC and returned to VCDC. (Doc. 111 at 8). Plaintiff's surgeon, Dr. Fenster, sent the following instructions to Dr. Smyth regarding Plaintiff's post-operative care: Plaintiff was to receive 5 to 10 mg of Roxicet (a narcotic pain medication) every 4 to 6 hours as needed and 500 mg of the antibiotic Ciprofloxacin daily for 7 days; his bandages were to be changed daily or as needed; he was to refrain from lifting, carrying or exercising for 2 months; and he was to remain on a low fat diet for two weeks. (Doc. 111-2 at 22-24).

Plaintiff contends that he did not receive his medications "but every so often", that his bandages were never changed, that he was not put on a low fat diet, and that Dr. Smyth never communicated to the staff at VCDC that he was not supposed to do any lifting, carrying or exercising for two months. (Doc. 111 at 5, 9). Plaintiff instead alleges that he was kept in the infirmary until May 25, 2003, where he received little to no medical care and was then released back into the general population with no special instructions. (Doc. 111 at 5).

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

A claim for relief under 42 U. S. C. § 1983 ("§ 1983") requires that Plaintiff allege the "deprivation of an actual constitutional right." *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999). "It is well settled that the deliberate indifference to serious medical needs of prisoners" constitutes a violation of the 8th Amendment to the United States Constitution. *Id.* (internal

-4-

citations omitted).  Therefore, to establish a claim under § 1983, a plaintiff must present evidence

of a (1) a serious medical need, (2) deliberate indifference to that need by the defendant, and (3) a

causal connection between the defendant's deliberate indifference and plaintiff's injuries.  *See*

*Hatten v. Prison Health Services, Inc.,* 2006 U.S. Dist. LEXIS 65143, *11 (M.D.Fla. Sept. 13,

2006). This Court agrees with Judge Baker that "Plaintiff's gall bladder disease qualifies as a

serious medical need."[1] (Doc. 137 at 9). Therefore, the Court will examine the issue of deliberate

indifference.

"[D]eliberate indifference has three components: (1) subjective knowledge of a risk of

serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."

*McElligott* at 1255. Plaintiff's complaints with regard to Halifax and Dr. Smyth essentially fall

into two categories: pre-operative and post-operative care.

With regard to his pre-operative care, Plaintiff argues that the facts of this case are

materially indistinguishable from the facts presented in *Blackmore v. Kalamazoo County,* 390 F.3d

890 (6th Cir. 2004), in which the Sixth Circuit reversed a district court's order granting summary

judgment to the defendant county, sheriff and sheriff's deputies. While the *Blackmore* decision is

not binding on this Court, it is highly persuasive in that it cites to, discusses and concurs with the

---

[1]Judge Baker stated that Plaintiff is required to present "verifying medical evidence . . . to establish the detrimental effect of delay in medical treatment." (Doc. 137 at 9). This Court agrees with Plaintiff that such evidence is not required in cases such as this, where the serious medical need was obvious. *See Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187-88 (11th Cir. 1994); *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897-98 (6th Cir. 2004). Therefore, Plaintiff's failure to provide this Court with such medical evidence is not detrimental to his claim.

Eleventh Circuit opinion in *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1187

(11th Cir. 1994). *Blackmore,* 390 F.3d at 897. The facts of *Blackmore* are as follows:

> Within an hour of his arrival, Blackmore began experiencing abdominal pain and
> complained to a deputy jailor, requesting medical care. Blackmore continued to complain
> about this pain. An entry in the Sergeant's jail log reflects that at 5:00 p.m. on Sunday,
> May 28, 2000, Blackmore was "complaining of abdominal pain". About that time, jail
> officials gave Blackmore antacids, but did not otherwise secure medical care.
>
> At some unidentified time on Monday, May 29, 2000, Blackmore filed a "Request for
> Medical Care" in which he complained of "sharp" and "extreme abdominal pain in the
> lower area" lasting twenty-six hours for which he needed medical attention "right away". A
> later entry in the Sergeant's jail log reflects: (1) that at 1:30 a.m., Blackmore "stated that he
> is having sharp abdominal pains;" (2) Blackmore "had vomited and the antacids that were
> given to him earlier did not help;" and (3) that Blackmore "stated that the pains have been
> constant since Saturday afternoon . . . ." At this time, jail officials placed Blackmore into
> an observation cell, but did not provide any medical treatment. *Id.*
>
> At 6:30 a.m. Monday morning, over two complete days after his first complaint of pain, a
> jail nurse examined Blackmore and diagnosed him as "showing classic signs of
> appendicitis." Blackmore was transported to a local hospital at approximately 7:00 a.m.,
> and an appendectomy was successfully performed early that afternoon without
> complication.

*Blackmore*, 390 F.3d at 894.

The facts in *Blackmore* are similar to the facts at hand. Both plaintiffs complained of the

same symptoms orally and in writing for two days, both plaintiffs were put in observation, and

both plaintiffs were eventually transported to a hospital because for treatment. However, there is

one major difference in the two cases that is material: Blackmore did not receive *any* medical

attention for over 50 hours after he began complaining of his symptoms. It is clear from the

discussion by the Sixth Circuit that this fact was material to its ultimate decision:

> Here, Blackmore alleges that he began to complain of stomach pain within an hour of his
> arrival in the early morning hours on Saturday, May 27. It is undisputed that Sergeant's
> Log entries at 5:00 p.m. on Sunday evening and at some point on Monday morning
> describe Blackmore as having "sharp abdominal pain." Other undisputed facts are that

Blackmore was given antacids by non-medical prison officials, that Blackmore vomited, that he was placed in an observation cell, and that he did not receive any medical attention until 6:00 a.m. on Monday morning, over fifty hours after his arrest.

Viewing these facts in a light most favorable to the Plaintiff, we conclude that a reasonable jury could conclude that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the Defendants ignored that risk." *Farmer*, 511 U.S. at 837. Thus, we agree with the district court that a material factual dispute exists on whether Defendants had a "sufficiently culpable state of mind" under the subjective prong of the "deliberate indifference" test.

*Blackmore,* 390 F.3d at 896.

Plaintiff complains that he should have been seen by a medical doctor, rather than simply a registered nurse. However, the fact remains that Plaintiff was provided with medical attention as soon as he began complaining of symptoms. The evidence shows that, while the medical care may not have been what Plaintiff desired, it did not rise to the level of deliberate indifference. Plaintiff was examined by a registered nurse immediately, who then sought advice from a Physician's Assistant. Plaintiff was kept in the infirmary, observed and offered a liquid diet which he initially refused. Plaintiff admits that on the morning of the 17th he was "feeling better though starved." This indicates that the medical staff had reason to believe his condition was improving. As soon as Plaintiff's symptoms worsened, Dr. Smyth was contacted and Plaintiff was taken to the emergency room at HMC. Therefore, with regard to Plaintiff's pre-operative care, this Court finds that Plaintiff has failed to present sufficient evidence of deliberate indifference.

As for Plaintiff's post-operative care, Plaintiff complains that he did not receive the treatment recommended by his surgeon. Plaintiff states that, even though he was kept in the infirmary for three days after his surgery, he did not receive his medication, his bandages were not changed and his prescribed diet was not implemented. Plaintiff states that the failure to provide

him with his antibiotic and/or change his bandages resulted in an infection. Plaintiff further alleges

that after being released back into general population, he was forced to clean the incision himself

and was completely abandoned by the medical staff. Defendants contend that Plaintiff failed to

show up for two follow up appointments in the infirmary, however, Plaintiff states that he was not

aware of any follow up appointments being scheduled. Taking the facts in the light most favorable

to the Plaintiff, it appears that he was completely neglected in the days after his surgery. Therefore,

Plaintiff has provided enough evidence to create a jury question as to deliberate indifference with

regard to his post-operative care *only*.

 *A) Dr. Smyth*

  Plaintiff has not presented any evidence which would suggest that Dr. Smyth was

deliberately indifferent to Plaintiff's serious medical needs. The doctrine of *respondeat superior*

does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.*, 290

F. Supp. 2d 1300, 1308 (M.D.Fla. 2003). Therefore, Plaintiff must establish that Dr. Smyth was

himself deliberately indifferent to Plaintiff's serious medical needs, not simply that the employees

he supervised were deliberately indifferent. Plaintiff's allegations with regard to his post-operative

care do not support anything more than mere negligence on the part of Dr. Smyth for failing to

provide a low fat diet to Plaintiff and failing to advise VCDC staff of his work restrictions.

Furthermore, Plaintiffs allegations regarding Dr. Smyth prescribing him Lortab and Tylenol for

pain instead of Roxicet do not illustrate deliberate indifference. This decision was a medical

decision made by Dr. Smyth that cannot be second-guessed by this Court.[2]  Therefore, Defendant

Smyth is entitled to summary judgment.

     *B) Halifax*

     As discussed above, Plaintiff has provided sufficient evidence of deliberate indifference to

create a jury question as to whether he suffered a constitutional deprivation at the hands of Halifax

employees. However, this is not enough to establish a claim against Halifax because, as noted

above, the doctrine of *respondeat superior* does not apply in this context. Therefore, Halifax's

liability may only be established in one of four ways:

> (1) the constitutional deprivation was caused by a policy or custom of the local
> governmental entity, or (2), the final policymakers of the local governmental entity acted
> with deliberate indifference to a constitutional deprivation, or (3) the final policymakers of
> the local governmental entity delegated their authority to a subordinate who, in turn, caused
> a constitutional deprivation, or (4) the final policymakers of the local governmental entity
> ratified a constitutionally impermissible decision or recommendation of a subordinate
> employee.

*Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006).

     A municipal policy or custom is "a persistent and wide-spread practice." *Church v. City of*

*Huntsville,* 30 F.3d 1332, 1345 (11th Cir. 1994).  Plaintiff must establish, not only that the policy

or custom existed but also that "actual or constructive knowledge of such custom" is attributable to

government officials. *Id.*  Therefore, "random acts or isolated incidents" are generally not enough

to establish municipal liability. *Id.*

---

    [2]Lortab is a "combination of acetaminophen and hydrocodone [that] is used to relieve moderate
to severe pain." Drugs.com, http://www.drugs.com/lortab.html (last visited August 13, 2007).

Plaintiff fails to allege or provide any evidence of any customs or policies regarding his post-operative care. Instead, Plaintiff makes several allegations that the staff at VCDC violated the policies of Halifax in failing to care for him properly after his operation. These isolated violations of policy do not support a claim against Halifax. Therefore, Halifax is entitled to summary judgment as well.

It is, therefore

**ORDERED** that:

1.       The Objection to the Report and Recommendation is **OVERRULED** and the Recommendation of the Magistrate Judge is **AFFIRMED**;

2.       The Defendants' Motion for Summary Judgment (Doc. 104) is **GRANTED**.

3.       The Clerk is directed to enter Final Judgment in favor of Defendants John P. Smyth and Halifax Medical Center.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 13, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge
Counsel of Record
Unrepresented Party